D. Maimon Kirschenbaum
JOSEPH KIRSCHENBAUM LLP
32 Broadway, Suite 601
New York, NY 10004
(212) 688-5640
(212) 688-2548 (fax)

*Attorneys for Named Plaintiff, proposed FLSA Collective Plaintiffs, and proposed Class*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------------x
CAMPUS JOHNSON, on behalf of himself
and others similarly situated,

        Plaintiffs,

v.

RED ROOSTER HARLEM LLC, AND
MARCUS SAMUELSSON

        Defendants.
-----------------------------------------------------------x

CASE NO.

COMPLAINT

FLSA COLLECTIVE ACTION AND
RULE 23 CLASS ACTION

DEMAND FOR JURY TRIAL

Plaintiff alleges as follows:

## INTRODUCTION

1.    Defendant Marcus Samuelson stated in an interview recently that "As a black person, it's clear that the grid is not made for us…" Unfortunately, this very problem holds true in Mr. Samuelson's own restaurant, Red Rooster, where—despite being in the heart of Harlem—there is a plain aversion to black male bartenders. In fact, Plaintiff was the only black male out of about ten bartenders for most of his employment with Defendants. Adding insult to injury, Defendants terminated Plaintiff's employment for a completely fabricated reason days after Plaintiff requested FMLA-protected time off to care for his mother that had leukemia.

2.  In addition, Defendants routinely shaved tipped employees' time to line their own pockets and failed to comply with the proper notice requirements set forth in the New York Labor Law.

## JURISDICTION AND VENUE

3.  This Court has original federal question jurisdiction under 28 U.S.C. § 1331 because this case is brought under the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.* ("FLSA") and the Family and Medical Leave Act ("FMLA") 28 U.S.C. § 2601, *et seq,*. This Court has supplemental jurisdiction over the New York City law claims, as they are so related to the claims in this action within the Court's original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

4.  Venue is proper in this District because Defendants conduct business in this District, and the acts and/or omissions giving rise to the claims herein alleged took place in this District.

## THE PARTIES

5.  Defendant Red Rooster Harlem LLC ("Red Rooster") is a New York corporation that operates Red Rooster and Street Bird restaurants in Manhattan.

6.  Red Rooster has an annual gross volume of sales in excess of $500,000.

7.  Defendants employ more than 50 full-time employees at Plaintiff's work location.

8.  Defendant Marcus Samuelsson is an owner and manages Red Rooster Restaurant.

9.  Defendant Marcus Samuelsson has ultimate authority over hiring and firing and scheduling at Red Rooster Restaurant.

2

10. Defendant Marcus Samuelsson has ultimate authority over employees' pay rates at Red Rooster and Restaurant.

11. Defendant Marcus Samuelsson is actively involved in the day-to-day management and frequently present at Red Rooster.

12. Plaintiff started working for Red Rooster as porter in 2014. In 2015, he became a barback. In 2016 he became a bartender.

## FLSA COLLECTIVE ACTION ALLEGATIONS

13. Plaintiff brings the First and Second Claims for Relief as a collective action pursuant to FLSA Section 16(b), 29 U.S.C. § 216(b), on behalf of tipped service employees employed by Defendants at Red Rooster on or after the date that is three years before the filing of the Original Complaint in this case as defined herein ("FLSA Collective").

14. At all relevant times, Plaintiff and the other FLSA Collective Plaintiffs are and have been similarly situated, have had substantially similar job requirements and pay provisions, and are and have been subject to Red Rooster's decision, policy, plan and common policies, programs, practices, procedures, protocols, routines, and rules willfully failing and refusing to pay them for all overtime hours worked. The claims of Plaintiff stated herein are essentially the same as those of the other FLSA Collective Plaintiffs.

15. The First and Second Claims for Relief is properly brought under and maintained as an opt-in collective action pursuant to § 16(b) of the FLSA, 29 U.S.C. 216(b). The FLSA Collective Plaintiffs are readily ascertainable. For purpose of notice and other purposes related to this action, their names and addresses are readily available from the Red Rooster. Notice can be provided to the FLSA Collective Plaintiffs via first class mail to the last address known to Red Rooster.

## RULE 23 CLASS ALLEGATIONS – NEW YORK

16.     Plaintiff brings the state law Third, Fourth, and Fifth Claims for Relief pursuant to the Federal Rules of Civil Procedure ("F.R.C.P.") Rule 23, on behalf of all tipped service employees employed by Defendants at Red Rooster on or after the date that is six years before the filing of the Original Complaint in this case as defined herein (the "Class Period").

17.     All said persons, including Plaintiff, are referred to herein as the "Class." The Class members are readily ascertainable. The number and identity of the Class members are determinable from Red Rooster's records. The hours assigned and worked, the positions held, and the rates of pay for each Class member are also determinable from Red Roosters' records. For purposes of notice and other purposes related to this action, their names and addresses are readily available from Red Rooster. Notice can be provided by means permissible under said F.R.C.P. 23.

18.     The proposed Class is so numerous that joinder of all members is impracticable, and the disposition of their claims as a class will benefit the parties and the court. Although the precise number of such persons is unknown, and the facts on which the calculation of that number are presently within the sole control of Red Rooster, upon information and belief, there are more than forty (40) members of the Class.

19.     Plaintiff's claims are typical of those claims which could be alleged by any member of the Class, and the relief sought is typical of the relief which would be sought by each member of the Class in separate actions. All the Class members were subject to the same corporate practices of Red Rooster, as alleged herein, of failing to pay for all regular and overtime hours worked. Red Rooster's corporate-wide policies and practices affected all Class members similarly, and Red Rooster benefited from the same type of unfair and/or wrongful

4

acts as to each Class member. Plaintiff and other Class members sustained similar losses, injuries and damages arising from the same unlawful policies, practices and procedures.

20. Plaintiff is able to fairly and adequately protect the interests of the Class and has no interests antagonistic to the Class. Plaintiff is represented by attorneys who are experienced and competent in both class action litigation and employment litigation and have previously represented plaintiffs in wage and hour cases.

21. A class action is superior to other available methods for the fair and efficient adjudication of the controversy – particularly in the context of wage and hour litigation where individual class members lack the financial resources to vigorously prosecute a lawsuit against Red Rooster. Class action treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of efforts and expense that numerous individual actions engender. Because the losses, injuries and damages suffered by each of the individual Class members are small in the sense pertinent to a class action analysis, the expenses and burden of individual litigation would make it extremely difficult or impossible for the individual Class members to redress the wrongs done to them. On the other hand, important public interests will be served by addressing the matter as a class action. The adjudication of individual litigation claims would result in a great expenditure of Court and public resources; however, treating the claims as a class action would result in a significant saving of these costs. The prosecution of separate actions by individual members of the Class would create a risk of inconsistent and/or varying adjudications with respect to the individual members of the Class, establishing incompatible standards of conduct for Red Rooster and resulting in the impairment of class members' rights and the disposition of their interests through actions to which they were not parties. The issues

in this action can be decided by means of common, class-wide proof. In addition, if appropriate, the Court can, and is empowered to, fashion methods to efficiently manage this action as a class action.

22. Upon information and belief, Red Rooster and other employers throughout the state violate the New York Labor Law. Current employees are often afraid to assert their rights out of fear of direct or indirect retaliation. Former employees are fearful of bringing claims because doing so can harm their employment, future employment, and future efforts to secure employment. Class actions provide class members who are not named in the complaint a degree of anonymity which allows for the vindication of their rights while eliminating or reducing these risks.

23. There are questions of law and fact common to the Class which predominate over any questions affecting only individual class members, including:

a) Whether Red Rooster employed Plaintiff and the Class members within the meaning of the New York law.

b) At what common rate, or rates subject to common methods of calculation, were and are Red Rooster required to pay Plaintiff and the Class members for their work.

c) What are and were the policies, practices, programs, procedures, protocols and plans of Red Rooster regarding the types of work and labor for which Red Rooster did not pay the Plaintiff and the Class members at all.

d) Whether Red Rooster gave Plaintiff and the Class members the wage statements required by New York Labor Law § 195 and the New York Hospitality Wage Order.

e) Whether Defendants paid Plaintiff and the Class members for all hours worked, including overtime.

## FACTS

### Wage and Hour Allegations

23. Plaintiff's consent to sue form is attached hereto as Exhibit A.

24. When Plaintiff became a barback in August 2015, he was paid $5.15 per hour, which was less than the full federal and state minimum wages.

25. Plaintiff was not given a notice in August 2015 spelling out his correct hourly pay and/or that would be paid pursuant to a tip credit against the minimum wage.

26. Therefore, Defendants were not entitled to pay Plaintiff pursuant to any tip credits from August 2015 through the end of 2015.

27. In 2016, Defendants paid Plaintiff less than New York state full minimum wage of $9 per hour.

28. Plaintiff was not given a notice in the beginning of 2016 spelling out his correct hourly pay and/or that would be paid pursuant to a tip credit against the minimum wage.

29. Therefore, Defendants were not entitled to pay Plaintiff pursuant to any tip credits for the year 2016.

30. Plaintiff occasionally worked in excess of 40 hours per workweek, and his paystubs reflect that he was paid for some overtime sporadically throughout his employment.

31. Until about early 2017, Defendants routinely deducted half an hour from Plaintiff's pay each shift.

32. This deduction was ostensibly for a meal break. However, Plaintiff was hardly ever afforded a meal break during his workday.

33. Accordingly, Plaintiff worked for an unpaid half an hour each workday.

34. For weeks when Plaintiff's total hours worked were less than 40, Plaintiff was underpaid by a half hour per shift at his regular rate.

35. For the weeks that Plaintiff did in fact work in excess of 40 hours in a workweek, he was deprived of overtime pay.

36. Red Rooster did not give Plaintiff the wage statements required by N.Y. Lab. Law § 195.

37. For example, N.Y. Lab. Law § 195 requires an employer's weekly wage statement to set forth employees' actual hours worked and any credits taken against their wages. However, Plaintiff's paystubs did not accurately list his hours worked, as a result of the incorrect deduction of a half hour per shift.

38. In addition, Plaintiff's wage statements made no mention of the tip credits, as required by New York law.

39. Defendants committed the foregoing acts against Plaintiff, the FLSA Collective Plaintiffs, and the Class.

40. Defendants committed the foregoing act willfully.

## FMLA/Discrimination Allegations

41. For most of Plaintiff's employment as a bartender, he was the only African-American male bartender at Red Rooster. Other times there was at most one other African-American male bartender.

42. There were additional female African-American bartenders, but they were in the clear minority.

8

43. Given Red Rooster's location in Harlem, a largely African-American community, and its owner Marcus Samuelson's outspokenness on the challenges that African Americans face in the restaurant industry, the lack of African-American bartenders at Red Rooster was conspicuous. In fact, customers mentioned this to Plaintiff several times.

44. On March 6, 2018, Plaintiff requested a two-month leave from work, in order to take care of his mother, who is suffering from leukemia.

45. Plaintiff's request was approved, and he was scheduled to take the leave on March 18, 2018. The leave would have been partially paid pursuant to New York's Paid Family Leave Act.

46. On March 8, 2018, two days after Plaintiff's request was submitted and approved, Defendants by surprise terminated Plaintiff's employment.

47. Defendants claim to have terminated Plaintiff for failing to use a "jigger" to moderate his drink pouring.

48. Defendants' stated reason was blatantly false and pretextual.

49. Defendants' did not have a stated policy regarding jiggers.

50. At times, for example when pouring multiple shots of a drink, using jiggers would be highly cumbersome. For this reason, other bartenders and managers at Red Rooster (including, until then, Plaintiff) routinely poured drinks without using jiggers and did not suffer any discipline.

51. Given the timing of Plaintiff's termination, his status as the only male black bartender, and the patent absurdity of the stated reason for his termination, it is clear that Plaintiff was terminated on the basis of his race and his protected request to care for his sick mother.

## FIRST CLAIM FOR RELIEF
### (FLSA Minimum Wage Claims, 29 U.S.C. § 201, *et seq.*, Brought by Plaintiff on Behalf of Himself and the FLSA Collective)

52. Plaintiff realleges and incorporates by reference all preceding paragraphs as if they were set forth again herein.

53. At all relevant times, Defendants have been, and continue to be, "employers" engaged in interstate "commerce" and/or in the production of "goods" for "commerce," within the meaning of FLSA, 29 U.S.C. § 203. At all relevant times, Defendants have employed "employee[s]," including Plaintiff and each of the FLSA Collective Plaintiffs.

54. Defendants knowingly failed to pay Plaintiff and the FLSA Collective Plaintiff the federal minimum wage for each hour worked.

55. Plaintiff, on behalf of himself and the FLSA Collective Plaintiffs, seeks damages in the amount of their respective unpaid compensation, liquidated (double) damages as provided by the FLSA for minimum wage violations, attorneys' fees and costs, pre- and post-judgment interest, and such other legal and equitable relief as this Court deems just and proper.

## SECOND CLAIM FOR RELIEF
### (FLSA Overtime Violations, 29 U.S.C. § 207 - Brought by Plaintiff on Behalf of Himself and the FLSA Collective)

56. Plaintiff incorporates the allegations contained in the previous paragraphs of this Complaint as if fully set forth herein.

57. Throughout the statute of limitations period covered by these claims, Defendants were and continue to be "employers" engaged in interstate commerce within the meaning of the FLSA and employed Plaintiffs and each Putative Collective Action Member.

58. At all relevant times, Plaintiff and the Putative Collective Action Members regularly worked in excess of forty (40) hours per workweek.

59. At all relevant times, Defendants operated under a policy and practice of failing to pay proper overtime compensation to Plaintiff and the Putative Collective Action Members for all of the hours they worked in excess of 40 hours per week, and demanded, encouraged, allowed, and/or knowingly permitted the Putative Collective Action Members to work off-the-clock.

60. At all relevant times, Defendants willfully, regularly, repeatedly and knowingly failed to pay Plaintiff and the Putative Collective Action Members at the required overtime rate of one-and-one-half their regular hourly rate of pay for all hours worked in excess of forty (40) hours per workweek.

61. Plaintiff, on behalf of himself and the Putative Collective Action Members, seeks damages in the amount of their respective unpaid overtime compensation, liquidated (double) damages as provided by the FLSA for overtime violations, attorneys' fees and costs, and such other legal and equitable relief as this Court deems just and proper.

### THIRD CLAIM FOR RELIEF
(New York State Minimum Wage Act, New York Labor Law § 650 *et seq.*
Brought by Plaintiff on Behalf of Himself, the Opt-In Plaintiffs, and the Class)

62. Plaintiff realleges and incorporates by reference all preceding paragraphs as if they were set forth again herein.

63. Defendants knowingly paid the Plaintiff and members of the Class less than the New York minimum wage as set forth in N.Y. Lab. Law § 652 and supporting regulations of the New York State Department of Labor.

64. Defendants did not pay Plaintiff and members of the Class minimum wage for all hours worked.

65. Defendants' failure to pay Plaintiff and members of the Class the minimum wage was willful within the meaning of N.Y. Lab. Law § 663.

66. As a result of Defendants' willful and unlawful conduct, Plaintiff and members of the Class are entitled to an award of damages, including liquidated damages, in amount to be determined at trial, pre- and post-judgment interest, costs and attorneys' fees, as provided by N.Y. Lab. Law § 663.

## FOURTH CLAIM FOR RELIEF
**(NYLL Overtime Violations, New York Lab. Law § 191,
N.Y. Comp. Codes R. & Regs. Titl. 12, § 146-2.2 –
Brought by Plaintiff on Behalf of Himself, the Opt-In Plaintiffs, and the Class)**

67. Plaintiff incorporates the allegations contained in the previous paragraphs of this Complaint as if fully set forth herein.

68. It is unlawful under New York law for an employer to suffer or permit a non-exempt employee to work without paying overtime premiums for all hours worked in excess of forty (40) hours in any workweek.

69. It is unlawful under New York law for an employer to suffer or permit an employee to work without compensation for all hours worked.

70. At all relevant times, Defendants operated under a policy and practice of failing to pay proper overtime compensation to Plaintiff and the Class Members for all of the hours they worked in excess of 40 hours per week, and demanded, encouraged, allowed, and/or knowingly permitted the Class Members to work off-the-clock.

71. At all relevant times, Defendants willfully, regularly, repeatedly and knowingly failed to pay Plaintiff and the Class Members at the required overtime rate of one-and-one-half their regular hourly rate of pay for all hours worked in excess of forty (40) hours per workweek.

72. Plaintiff, on behalf of himself and the Class Members, seeks damages in the amount of their respective unpaid overtime compensation, liquidated damages as provided by the NYLL, attorneys' fees and costs, pre and post judgment interest, and such other legal and equitable relief as this Court deems just and proper.

## FIFTH CLAIM FOR RELIEF
### (Failure to Provide Accurate Pay Statements – NYLL § 195
### Brought by Plaintiff on Behalf of Himself, the Opt-In Plaintiffs, and the Class)

73. Plaintiff, on behalf of himself and the Class Members, realleges and incorporates by reference all previous paragraphs as if they were set forth again herein.

74. Section 195(3) of the NYLL requires every employer to "furnish each employee with a statement with every payment of wages . . . . For all employees who are not exempt from overtime compensation as established in the commissioner's minimum wage orders or otherwise provided by New York state law or regulation, the statement shall include the regular hourly rate or rates of pay; the overtime rate or rates of pay; the number of regular hours worked, and the number of overtime hours worked."

75. The pay statement Defendants provided to Plaintiff and the members of the Class did not include an accurate number of hours worked.

76. The pay statements that Defendants provided to Plaintiff and the members of the Class included the number of regular and overtime hours paid, not the number of regular and overtime hours actually worked as required by the NYLL.

77. Defendants did not give Plaintiff a proper notice and acknowledgement of pay rate form as required by NYLL 195(1).

78. Defendants consequently owe Plaintiff and the members of the Class statutory damages as specified by NYLL § 198.

13

79. Plaintiffs, on behalf of themselves and the Class Members, seek statutory damages as specified by NYLL § 198, reasonable attorneys' fees and costs, and such other legal and equitable relief as this Court deems just and proper.

### SIXTH CLAIM FOR RELIEF
(42 U.S.C. § 1981 – Race Discrimination
Brought by Plaintiff )

80. Plaintiff realleges and incorporates by reference all preceding paragraphs as if they were set forth again herein.

81. In violation of 42 U.S.C. § 1981, Defendant intentionally discriminated against Plaintiff on the basis of his race by terminating his employment.

82. Defendants' conduct was outrageous and malicious, was intended to injure, and was done with reckless indifference to Plaintiff's statutorily-protected rights.

83. As a direct and proximate result of Defendant's unlawful conduct, Plaintiff has suffered, and continues to suffer, monetary damages and non-monetary damages, including, but not limited to, loss of income, emotional distress, damage to Plaintiff's good name and reputation, lasting embarrassment, and humiliation.

84. As a result of Defendant's unlawful conduct, Claimant is entitled to compensatory damages, including but not limited to lost wages; damages for emotional distress; punitive damages; pre- and post-judgment interest; attorneys' fees and costs; and such other legal and equitable relief as just and proper.

### SEVENTH CLAIM FOR RELIEF
(FMLA-29 U.SC. § 6501 *et seq*
Brought by Plaintiff)

85. Plaintiff realleges and incorporates by reference all preceding paragraphs as if they were set forth again herein.

86. In violation of the FMLA, Defendants intentionally discriminated/retaliated against Plaintiff because he requested FMLA protected leave.

87. As a direct and proximate result of Defendants' unlawful conduct, Plaintiff has suffered, and continues to suffer, substantial monetary damages, including, but not limited to, loss of income, including past and future salary.

88. As a direct and proximate result of Defendants' unlawful conduct, Plaintiff has suffered, and continues to suffer, substantial non-monetary damages, including, but not limited to emotional distress, physical pain and suffering, damage to Plaintiff's good name and reputation, lasting embarrassment, and humiliation.

89. As a result of Defendants' unlawful conduct, Plaintiff is entitled to compensatory damages, liquidated damages, attorneys' fees and costs, and such other legal and equitable relief as this Court deems just and proper.

### EIGHTH CLAIM FOR RELIEF
(New York City Human Rights Law ("NYCHRL")
N.Y. Admin. L. §§ 8-101 *et seq.* –Discrimination Brought by Plaintiff)

90. Plaintiff realleges and incorporates by reference all preceding paragraphs as if they were set forth again herein.

91. In violation of the NYCHRL, Defendants discriminated against and/or aided and abetted discrimination against Plaintiff on the basis of his race.

92. As a direct and proximate consequence of Defendants' discrimination, Plaintiff has suffered, and continues to suffer, substantial monetary damages, including, but not limited to, a loss of income, including future salary.

93. As a direct and proximate consequence of Defendants' discrimination, Plaintiff has suffered, and continues to suffer, substantial non-monetary damages, including, but not limited to, emotional distress and physical pain and suffering.

94. Defendants acted with willful or wanton negligence, recklessness, and/or with a conscious disregard of Plaintiff's rights.

95. As a result of Defendants' unlawful conduct, Plaintiff is entitled to compensatory damages, including but not limited to lost wages and damages for emotional distress; punitive damages; post-judgment interest; attorneys' fees and costs, and such other legal and equitable relief as this Court deems just and proper.

96. A copy of this complaint will be provided to the New York City Commission on Human Rights.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, on behalf of himself and the FLSA Collective Plaintiffs and members of the Class, prays for relief as follows:

A. An award of damages, according to proof, including, back pay, front pay, emotional distress damages, punitive damages, and liquidated damages, to be paid by Defendants;

B. Designation of this action as a collective action on behalf of the FLSA Collective Plaintiffs and prompt issuance of notice pursuant to 29 U.S.C. § 216(b) to all similarly situated members of the FLSA opt-in class, apprising them of the pendency of this action, and permitting them to assert timely FLSA claims and state claims in this action by filing individual Consent to Sue forms pursuant to 29 U.S.C. § 216(b);

C. Designation of Plaintiff as Representative of the FLSA Collective Plaintiffs;

D. Designation of this action as a class action pursuant to F.R.C.P. 23.

E. Designation of Plaintiff as Representative of the Class.

F. An award of damages, according to proof, including liquidated damages, to be paid by Defendants;

G. Penalties available under applicable laws;

H. Costs of action incurred herein, including expert fees;

I. Monetary damages including, but not limited to, unpaid wages, statutory damages, lost income, including past salary, future salary, and company-sponsored benefits, liquidated damages, and punitive damages in an amount to be determined at trial;

J. Non-monetary damages including, but not limited to, compensation for his humiliation and emotional distress and suffering, in an amount to be determined at trial, and punitive damages;

K. Attorneys' fees, including fees pursuant to 29 U.S.C. § 216, N.Y. Lab. L. § 663, N.Y.C. Admin. Code § 8-502, and other applicable statutes;

L. Pre-judgment and post-judgment interest, as provided by law; and

M. Such other and further legal and equitable relief as this Court deems necessary, just and proper.

Dated: New York, New York
       March 23, 2018

Respectfully submitted,

JOSEPH & KIRSCHENBAUM LLP

By: _____
D. Maimon Kirschenbaum
32 Broadway, Suite 601
New York, NY 10004
Tel: (212) 688-5640
Fax: (212) 688-2548

*Attorneys for Named Plaintiff, proposed FLSA Collective Plaintiffs, and proposed Class*

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a jury trial on all causes of action and claims with respect to which he has a right to jury trial.

# Exhibit A

# CONSENT TO SUE UNDER
# FEDERAL FAIR LABOR STANDARDS ACT

I am an employee currently or formerly employed by **Red Rooster** and/or related entities. I consent to be a plaintiff in an action to collect unpaid wages. I agree that I am bound by the terms of the Professional Services Agreement signed by the named plaintiffs in this case.

_Campus Johnson_
Full Legal Name (Print)

_[signature]_
Signature

_3-12-18_
Date